## MARYLAND CASUALTY CO. v. NEW JERSEY SHIPBUILDING & DREDGING CO.

No. 4430.

Circuit Court of Appeals, Third Circuit.

June 15, 1931.

James D. Carpenter, Jr., and McDermott, Enright & Carpenter, all of Jersey City, N. J., for appellant.

Reynier J. Wortendyke, Jr., and Autenrieth, Gannon & Wortendyke, all of Jersey City, N. J., for appellee.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

This is an appeal by the Maryland Casualty Company, hereinafter designated the Casualty Company, from a judgment recovered against it on a verdict for $15,000 as damages the New Jersey Shipbuilding & Dredging Company, hereinafter designated the Dredging Company, plaintiff in the court below, claimed to have sustained in loss of profits through the breach of an alleged contract with the Casualty Company for the performance of dredging work in Staten Island Sound.

The Casualty Company, appellant, was surety for the performance by the Seely Engineering Company of a contract with the United States for dredging and removing rock in Staten Island Sound. Upon default

of the Seely Company in completion of its contract, the Casualty Company became liable to the United States for completion or the cost of completion of the contract. It, therefore, sent out invitations to complete the work, one of which, in the following form, was sent to the Dredging Company:

"July 11, 1927.
"New Jersey Shipbuilding & Dredging Co.
  "50 Broad Street,
  "New York City.
"Gentlemen:
  "The contract of the Seely Engineering Company for the dredging and removal of rock in the New York and New Jersey Channels has been declared in default by the War Department.
  "The War Department has called upon the Maryland Casualty Company, as surety on the bond of the Seely Engineering Company, to complete the Seely Engineering Company's contract. Therefore, the Maryland Casualty Company is interested in bids for the completion of the Seely Engineering Company's contract for the dredging and removal of rock in the New York and New Jersey Channels.
  "The Maryland Casualty Company will receive bids for the completion of this contract at its office at 105 William Street, New York City, Room 603 on Thursday, July 14th, at 10:00 o'clock, and will award the contract for the completion of the Seely Engineering Company's contract to the lowest responsible bidder; reserving however the right to reject any or all bids submitted.
  "If you are interested, we would be glad to receive your bid on Thursday.
    "Very truly yours,
        "E. Kemp Cathcart,
  "Mgr. N. Y. Bonding Claim Division."

On July 14, 1927, the president of the Dredging Company, Charles D. Pullen, delivered to E. Kemp Cathcart, manager of the New York Bonding Claim Division of the Casualty Company, at his office a bid in the following form:

"July 14, 1927.
"Maryland Casualty Company,
  "105 William Street,
  "New York City,
"Gentlemen: Attention Mr. E. K. Cathcart, Mgr.
  "In accordance with your letter of the 11th instant:
  "We will finish the contract named therein according to the specifications of the U. S. Government Engineers, Second District, New York, dated September 24th, 1925, for the

price of Eighteen Dollars seventy-five cents, ($18.75) per cubic yard. We will be prepared to start on the work in as short time as possible and prosecute it in our usual businesslike manner.
  "Your letter speaks of this contract, as the contract of the Seely Engineering Company, Inc., and this is referred to by us as of the Engineers Specifications, dated September 24th, 1925.
"Very truly yours,      Chas. D. Pullen
    "Chas. D. Pullen, President,
        "50 Broad Street."

The plaintiff was the lowest bidder. The Casualty Company, under its contract with the United States, as surety for the Seely Company, had the right to elect to complete the work. On August 27, 1927, it entered into a written contract with the Standard Dredging Company to do the work on its behalf. The Dredging Company thereupon brought suit for damages for loss of profits based upon the allegation that on July 14, 1927, prior to the opening and submission of its bid, the clause of the invitation to bid, reading "reserving however the right to reject any or all bids submitted," had been waived by the Casualty Company; that, after waiver, on the same day, its bid had been accepted; and that thereupon a contract resulted between the Dredging Company and the Casualty Company for the completion of the Seely Engineering Company's contract with the United States.

At the trial, Mr. Pullen, president of the Dredging Company, testified that he was present at the office of the Casualty Company on July 14, 1927, the date on which bids were to be received, and that the following conversation took place:

"Cathcart said: 'Well, now, you are here,' he said, 'I hope we will get somewhere.' And he said, 'I rather expect that we may have some one else.'
"I said, 'Oh, we are not going to be alone.'
"He said, 'No, I think not. I have sent out for papers, and I think we will get other bids. I have just heard over the telephone from P. Sanford Ross that they are not ready to bid at this time, but they would be ready a little later, after they can learn a little more about the contract.' He said, 'We have one phoned-in price.'
"And I said, 'Wait a minute, Mr. Cathcart,' I said, 'you cannot go along on phoning and waiting. Are we going to do this business this morning or are we not?'
"And he said, 'Oh, yes, we will get

through with it, but,' he said, 'the Arundel Company has just phoned in, they are not going to be here.'

" 'Well,' I said, 'Mr. Cathcart, before we go any further, and while we have the opportunity, let us discuss this letter of yours,' and I took from my pocket that letter. 'Now,' I said, 'you remember the conference in our office with Mr. Seely and the distinct understanding that my company would not under any circumstances make any bid for this work excepting that we knew that the lowest bidder at this opening was going to get the work. That cannot be done by telephoning. Anybody can change a telephone talk or a telephone price, and,' I said, 'I should insist, first of all, that the understanding is that the lowest bidder gets the work.'

"He said: 'Mr. Pullen, you needn't worry about that at all.' He said, 'That is waived in a minute.' "

The witness further testified:

"Mr. Cathcart opened up my envelope and said, 'New Jersey Shipbuilding & Dredging Company, $18.75. Mr. Pullen, I congratulate you,' he said, 'I am glad you got the job, yours is the lowest bid.'

"Mr. Williams turned around to both of us and said, 'Well, I rather expected, Pullen, that you would be a little lower. You are right there with your plant. You have no expense to move onto it, and I rather thought you would get it.' And he said, 'I bid you good morning, gentlemen.'

"Mr. Cathcart turned to me around the other side of his desk and said, 'Mr. Pullen, now, I think your plant is just adapted to this work, and I am glad you got it.' And he said, 'When will you be ready to go to work?' I said, 'We are ready today.' He said, 'You will hear from me tomorrow.' We sat down and discussed it. I told him that I thought perhaps we were, and that we could move right over onto the area from where we were."

There was further testimony by Mr. Pullen as to waiver and acceptance of his bid to the same effect, and he was corroborated by his secretary, Miss Moss, who was with him.

The Casualty Company set up want of authority on the part of Mr. Cathcart to bind it, either by waiver of the right to reject any or all bids, or by accepting any bid. Upon those grounds, inter alia, the attorney for the Casualty Company, at the conclusion of the plaintiff's case, moved for a nonsuit. The motion was denied and exception allowed.

Mr. Cathcart, upon the witness stand, denied that he had made any statement agreeing, on behalf of the Casualty Company, to waive the right to reject bids or that he had accepted the plaintiff's bid, and denied that either act was within the scope of his authority.

The attorney for the defendant also excepted to the charge of the court, affirmed in accordance with the plaintiff's fourth request, as follows: "If you find that Mr. Cathcart withdrew or waived the right to reject any and all bids mentioned in his letter of invitation to bid, and that withdrawal or waiver took place before plaintiff's bid was actually submitted, and that upon the submission of the bids, the bid of the plaintiff was lowest, and that the plaintiff was ready and able to perform the work, then your verdict should be for the plaintiff in the amount of such damages as you find it sustained."

The authority of Mr. Cathcart to bind the defendant in the matter in suit was an essential element of the plaintiff's case. There was no evidence to show that the alleged agreements were within his authority. There was evidence that he was the manager of the New York Bonding Claim Division of the Casualty Company's business. Before submitting the case to the jury, however, it was incumbent upon the plaintiff to prove that he had authority either to waive the reserved right of the defendant to reject any or all bids to complete the defaulted contract of the obligor in the surety bond, or to accept a bid to bind the defendant as surety on that bond. While his title as manager of the Casualty Company's Bonding Claim Division would, on its face, appear to give him authority to represent the defendant in connection with transactions concerning claims against its principal, based upon bonds on which it was surety, the authority to bind it by altering the terms of the invitation for bids, or by the awarding of contracts with outsiders, after breach of contract by its principal, is, in our view, entirely beyond the scope of authority in him indicated by the title of Manager of the defendant's Bonding Claim Division. He might well, under that title, be invested with authority to issue surety bonds or to negotiate concerning claims upon bonds and determine whether the obligor, for which his company was surety, was in default. While he might be held to have authority to bind the Casual-

ty Company in matters relating directly to its obligations upon its surety bonds, the matter at issue here was one which is not plainly nor by reasonable implication included within the scope of authority indicated by his title.

We conclude, therefore, that the court was in error, first, in refusing the defendant's motion for a nonsuit; and, second, in charging the jury as set out in the plaintiff's fourth request upon the assumption, without proof, that Mr. Cathcart had authority to waive the right to reject bids or to enter into a contract for the Casualty Company with the plaintiff.

The decision of this case on the ground stated makes discussion of other questions raised unnecessary.

The judgment is reversed with venire de novo.